Ladies and gentlemen, I am Justice Sorelia Paczynski, and we are in the First Division of the First District of the Illinois Appellate Court hearing case, State of Illinois v. Philip Allison, No. 119-1318. As is normal in these Zoom hearings, you'll see on your screen my colleagues Justice Michael Hyman and Mary Ellen Kotlin. We normally give each side, you know, 15 minutes. We do have another case scheduled for two o'clock, so we can't be too flexible on the time. But obviously, we want to give you time to get your point across. I would like to just point out before we begin, we have read the record, we have read the briefs, we're familiar with the facts in the case, and we're also pretty familiar with your arguments in the case. So you might want to consider starting with the best argument that you can make for your side first, and then trickling down as you have time. And with that, I will ask you to introduce yourselves, please. Stephen Richards. I represent the appellant in this case, Philip Allison. Okay, and? Daniel Pibovarczyk on behalf of the people of the State of Illinois. Thank you. Okay, Mr. Richards, if you could begin, please. Your Honor, as you're aware, this is a conviction for first-degree murder and a sentence of 61 years. Now, there are three issues in my case. I'm going to deal mostly with the first issue and consider the second and third issues together in combination. The first issue, of course, being whether the court erred by failing to instruct the jury on the use of force to prevent a forcible felony, in this case, on lawful restraint. And the second and third issues involve the jury's question to the judge, and which should be considered in combination with the state's argument that if the jury found second degree, it would be saying that the killing was justified and that what Philip Allison did was okay. Now, in terms of the argument as to unlawful restraint. Now, you're basing that, I don't mean to interrupt you right at the beginning. Usually, I like to have a question pre-zone, but you're specifically referring to the forcible felony of unlawful restraint. Is that correct? That's correct. And I acknowledge that we didn't submit instructions as to aggravated battery. And I think aggravated battery involves other problems that unlawful restraint. I think the problem here, let me just say this. The legislature has made a decision as to give the boundaries of what sorts of force a citizen can use in different situations. Generally speaking, and the more obvious use of force or deadly force is when you're threatened with force that is either deadly or causes could cause severe bodily harm. Then you're entitled to use deadly force to defend yourself. However, you're also entitled to use deadly force in self-defense if you do not fear or death or great bodily harm, but you are being subjected to a forcible felony. And the legislature broadly defines forcible felonies. For example, a homeowner who is being burglarized can use deadly force, even though the burglar may be unarmed or is not threatening deadly force. So the legislature has decided that there are certain actions which put an aggressor so far outside the norm of civilized behavior that deadly force is appropriate. But what in here, the cases, almost all of them go against you, don't they? And what case, just for decades, when this issue has come up, the argument you have made has not been successful. So my question is, why should we change courses here? And in this case, you would be successful. Well, your honor, I would have to disagree that for decades that this argument has not been successful. There are three cases that are cited by the state are the Flores case, the Remihan case, and the Townsend case. These cases, by the way, all involve the forcible felony of aggravated battery. And actually, more specifically, the Flores case involved aggravated battery on a public way. Now, the Flores case, you have to keep in mind a couple of things. One is that after the Garcia case in 1988, when this court did hold that aggravated battery on a public way could justify use of deadly force, the legislature then changed the statute to say that aggravated battery on a public way was not a forcible felony. They did nothing with respect to unlawful restraint. And there are no cases involving unlawful restraint as a forcible felony in the context of self-defense. So it's not true that there's a whole bunch of case law against me. In terms of the Remihan case, what they said was since the forcible felony that was being claimed was essentially identical to the force being used against the defendant. In other words, I think it was the forcible felony was voluntary manslaughter that it really didn't matter whether you had a forcible felony or not because the forcible felony involved the same force which defendant claimed he needed to defend himself against. Here, though, there was two distinct series of actions and two distinct things the defendant said. One was that he thought after Mr. Shelton said, I'm going to murk you, I apologize in this motherfucker. He believed that he was being threatened with death. And he also thought that Shelton was reaching for a gun and that one of his compadres was also reaching for a gun. And that was verified because there was video showing that this person was putting his hand into his pants. The person claimed that he was adjusting his pants. But there was another distinct series of actions which informed what Philip Allison did, which is that DeAngelo Shelton made clear that he was appropriating this space in this building, a public lobby, for drug dealing. I'm sorry. Did anybody testify that there was drug dealing actually going on? Well, there is a strong inference because a lot of witnesses testified, including Alan Risha Clay and a number of others, that Shelton said, you can't come into this building because we're hustling in here. Hustling being a term used for drug dealing. He was also locking the doors. He also said to one of the witnesses testified, you can't come in here, we have drugs and guns in here. So that's plenty of evidence that what he was engaged in was drug dealing. Did somebody see him actually sell a drug? No. But he said that again and again to witnesses apart from Philip Allison, who had no motive to testify for Philip Allison, who weren't Philip Allison's friends. And the entire situation indicated the same. I mean, there was uncontested that he and his compadre threw a woman down the stairs and then pushed her out of the building. But Philip Allison hasn't been charged with trying to protect her. You're saying that he was trying to prevent a forcible felony against himself, the unlawful restraint of himself, Philip Allison, by the victim, Mr. Shelton. Correct. But I mean, put it this way. If you're standing on the street and you see somebody shoot a gun at somebody else, then they turn and point the gun at you. You can infer that the fact that they fired the gun at somebody else is evidence that they might do the same to you. Your analogy doesn't really apply because this is just she went down the stairs and they threw out the building. I understand all that. But he's saying that a woman blocked the door and there was a black man. He couldn't get out. I mean, that's a lot different than seeing somebody shoot someone. I mean, let's not mix up those two. But the analogy is not based upon how much force there is. It's based upon whether you can infer that a forcible felony is being committed against you if you see a forcible felony committed against somebody else. It depends on the circumstances. And here we have a six foot four individual who's bigger than anybody else around. Right. And there's women there. One woman leaves blocking the door later and he can't get out. Why isn't all of this something the jury did consider in connection with the instruction that was given? The jury didn't didn't believe any of his defense. Your Honor, I don't believe that's true, for one thing, because the jury did give a question about second degree, which means that they at least had a question as to whether he acted subjectively in self-defense. That's number one. Number two. So that indicates that they didn't reject they didn't reject his testimony altogether. They or it means that they just needed some clarification. They weren't sure, you know, a definition. They had some problems with the definition, which was already before the judges said, go, go. We've already given you that information. So. Well, your Honor, but just to stick with the point, the point that you've raised in terms of in terms of the overall situation, the problem is that his actions might be reasonable when you consider the fact that a forcible felony, which the legislature has said is something you can use deadly force to defend yourself against, was involved because they weren't instructed on it. How can there be a true verdict when the major theory of the defense was excluded from the jury's consideration? And remember that only some or slight evidence of that defense needed to be introduced. Philip Allison testified without contradiction that that's what he believed was happening, that this person was arrogating to building to keep people in the building. And he said so. So how in the world could you find that this is harmless if that's the argument or that the judge acted correctly if the very theory that the defense was advancing was not given to the jury in terms of an instruction. So in terms of this issue, this is a big issue. Your Honor, I could not disagree with you more, your Honor, this issue hasn't been resolved by the appellate court. As I point out in my reply brief where I discuss all three of those cases, as well as the Garcia case, they all involve aggravated battery. They all involve arguments that do not apply to unlawful restraint. And the question before your Honor is in a situation like this where somebody is obviously monopolizing public space for an illegal purpose, a purpose, by the way, which the state's attorney herself in her closing argument admitted was wrong. He meant that his actions were wrong. Can you say that the jury should not be instructed on the use of force to prevent a forcible felony? Okay, counsel, I would have a lot more reason to go along with this if it weren't for the fact that Mr. Allison actually did get out of the building and then went back into it. So nobody forced him to go back in. He was out. Nobody prevented him from getting out. He got out. And then he saw a police car and he went back in. He's pounding on the door to get back in. So it was his choice to go back in. So I'm having a hard time just figuring out how that's unlawful restraint when he chose to go back in. He was already out. They let him out. He got out. Well, first of all, there's two points to this. One is if you look at the whole situation, he originally went out and they let him out and that was fine. They were doing his drug dealing. He was going outside. But then he had a conversation with the woman who had been thrown down the stairs. He lent her a cell phone. She wanted to get back in the building. He did walk into the building voluntarily to have a conversation, which everyone says was civil on his part and not civil on the part of Mr. Shelton, which he just said, you know, you really can't treat women like this, throw them downstairs and push them out of the buildings. Now, after that conversation, which Shelton reacted to This is what he said, and this was corroborated by other witnesses. Then when Philip Allison was on his way out, but had not gotten out of the building and not gone out of the door at that point, Shelton said, I'm going to murk you in this motherfucker. And by the way, there's a testimony by a detective. He never heard the term before. Look on the Internet. It's all over the place. Murk is a synonym for murder, for kill. And that's the way Philip Allison understood it. So at that point, Philip Allison could reasonably conclude that Shelton was either going to kill him in the building, was not going to let him go out or is going to kill him if he didn't leave. But it was clear from the testimony of witness after witness that this is what Shelton was doing. He wasn't just standing around. He wasn't having a He was arrogating the lobby. He was deciding that the people of the city of Chicago, that lobby did not belong to the residents or the owners or the people of the city of Chicago. It belonged to him. And that's why Philip Allison acted as he did. And that's why the jury should have been instructed on that theory. OK, no, we didn't. The video is not part of the record, so we don't have the One defense witness, Miss Clay, said she didn't see anybody else with a weapon and then she saw the department turn around and shoot Miss Allison. His wife said, oh, I don't know anything about a gun. Then Mr. Evans, his cousin, his own cousin, said this for a testimony for the defense. And the defendant went to the party with a loaded gun. So. I'm still trying to figure out how all of this preventing a forcible felony of unlawful restraint is justifiable force and under our self-defense parameters. If he went to the party with a gun and his own witness said she didn't see anybody else with a witness and he's the one that turned around and shot. You know, I think you just made my point for me. Had he seen somebody else with a gun or had a gun been pointed at him, then the argument that he needed to shoot to prevent himself from being shot would have been more would have been stronger. But since he did not see anybody with the gun, I don't think anybody else did either. Correct. But your honor, again, is making my point. The. He was entitled to pull out the gun, which is his first use of force to prevent a forcible felony, even though he did not see a gun. And had there been no forcible felony involved, the action of him pulling out the gun would not have been justified. It's precisely because no guns were seen that it was so important that the jury be instructed on the forcible felony, because the forcible felony allows you to use deadly force, even if you're not threatened with deadly force, which you can use deadly force to prevent a forcible felony. So I think your honor has just made my point for me that the instruction was necessary, appropriate and needed. You know, I go with this again, but again, that's the point of having the forcible felony in the in the legislation. If it was if if every forcible felony had to involve a gun or more or more force, then the forcible felony justification would not be needed. It's needed because the legislature recognizes that in certain situations was entitled to use deadly force in response to a forcible felony. With respect to the second and third issues. I think that the there is no justification for what the prosecutor said that it was OK that first of all, let me say that in general, my experience has been that it's difficult to have instruct and have juries understand what second degree murder is and how it works, simply because it involves a reversal of many of the normal rules. The defendant has to prove it preponderance. The state often argues against it. The defense often argues for it. It's a little bit difficult. In this particular case, the difficulty was increased because the prosecutor deliberately confused the issue. She said, if it's second degree, then it's justified. Not true. The opposite of the truth. If it's second degree, it's unjustified by definition. And she also said, jury, if you find second degree, you're saying this is OK. That is absolutely false. Secondary murder is a class one felony enhanced by up to 20 years. No jury is saying it's OK if they find somebody guilty of secondary murder. And it has to be shown that her statement was a material factor. And you have to look at the effect of that argument. Your Honor, a tiny bit to which an objection was made. And instead of the objection being sustained, which might have cured the error, all the judge said, obviously knowing that the prosecutor was going way over the bounds, was move along, say something else. So once the jury heard the prosecutor say it, heard me object, I was the objection. It was not a minor issue anymore. And the proof that it's major is the jury's confusion, because all of a sudden during their deliberation, suddenly they don't know what a preponderance means and they don't know what mitigating factor means. And in order to follow the instructions and to render a verdict of secondary murder, you have to know what preponderance means and you have to know what mitigating factor means, because that's the way you do it. If you find by a preponderance that there's a mitigating factor, that the defendant believed he was acting in self-defense, even if unreasonable or unjustified, then you have to find second degree. But the jury didn't understand it. Why didn't they understand it? Maybe, not maybe, certainly because the prosecutor misstated the law, an objection was made, and the judge did not sustain the objection. So this was not minor. This went to the heart of the case. Mr. Richards, wasn't the jury instructed as to the definition of those terms? Well, if you read the actual instruction, it's not as clear as it might be. It says- But they were instructed. They were instructed. They were instructed and they were confused. And the law is that where they're instructed and they are confused, the judge has a duty to answer their questions, as best can be done. And the defense was there. I was there and I said, you should do something. You should give separately the civil definition of preponderance, because obviously they just told you they don't know what that means. But aren't they identical? No, they're not identical. How are they different? They're different because preponderance is a standalone instruction, which tells you what preponderance means. Whereas if you read the instruction on second degree, preponderance is combined. The word preponderance is combined with then a definition of second degree. You're not suggesting that the actual definition is different, are you? Of preponderance? Yes. No, but it's more clearly presented if you separately tell them what preponderance means rather than combining preponderance with then going on to say, by preponderance, I mean, there's more likely or not there's a mitigating factor. Obviously, we as lawyers understand that we're geniuses. Juries aren't. They didn't understand. They said they didn't understand. All that was needed to make them understand was to separately tell them what preponderance of the evidence means in general, and to tell them what a mitigating factor means, which they were confused about as well. They didn't get it. They weren't functioning as a jury properly instructed, and the judge should have done something about it. So you do criminal trials a lot, I suppose. Do you see a lot of trials where the civil instruction on preponderance is given in a criminal case? I have not seen that, but since it's identical to the definition in a criminal case, it's appropriate to use it. Let me just back up on that. It's not entirely identical. The criminal definition is more probably true than not, and the civil is more probably true than not true. So there's an extra word in the civil instruction. So they're not completely identical. They get the same point across, but they're not completely identical. So I can understand why you asked for the civil instruction, but I can't tell you that I'm surprised that the judge in a criminal murder trial declined to give it. Well, I am surprised. Had I asked for it initially, the judge could have said, well, the IPI is considerate. This is the way they want to do it. This is the way we do it under the IPI. Okay. But this is not the situation where we're talking about the initial instruction. This is a situation where the jury is confused. And as your honor points out, the civil instruction does include an additional word, which doesn't change the meaning, but makes it more clear. They didn't get it. The civil instruction would have made it clearer because as your honor points out, it includes this extra word or the extra phrase, not true. Do you think that there's anything, I mean, you're arguing that there's something unclear about the words, more probably true than not. Yes, because it's part of a larger, longer, complex sentence, which begins with preponderance and ends with talking about mitigating factor. Whereas the civil instruction is a standalone instruction on preponderance, which just tells them in general what preponderance means. And again, as attorneys, we use these terms all the time. We, preponderance, we get that right away. We, immediately, it leaps to our mind, more likely than not, more probable, more than 50%, et cetera. Not so to juries. These are not words used in common parlance, which is why they need to be defined and why in this particular case, the jury was confused. They could have been enlightened and the enlightenment had an effect on the verdict. And if your honor has another question or another skeptical comment based upon what I've said, I'd be happy to elaborate. But if they don't know what preponderance means, they don't know what mitigating means, how in the world can they reach the verdict of second degree? They can't because they don't know what it is. But those five words are not hard words, more probably true than not. I would guess that any parent of grade school children could figure that out. I would guess that any working person in the work world can figure that out. I would guess that any juror can figure that out. It's only five words. They're not complicated words. They're not big, big, complicated legal words. They're- Well, but you have to link it to preponderance, which occurs in the beginning of the sentence and you also have to go on. The sentence then goes on to talk about the mitigating factors. So given the way that it's written and the proof that maybe this was a particularly dense jury, or maybe there were jurors who were in particular wanted to confuse other jurors because they didn't want second degree, who knows? The issue deserved to be clarified and could have been and wasn't. I mean, the fact is, fifth or sixth graders, right ones might have known what was happening. These jurors didn't. They said so. That's why they asked the question. Had they not asked the question, we wouldn't be talking about this. Do you have anything else, Mr. Richards? No, that's my argument. Okay, fine. And you've apparently reserved some time for rebuttal. So we'll move along to Mr. Bibow-Baczek. Thank you, Your Honor. May it please the court. Regarding the first issue, there's two points that I'd like to make. And they break down to that there was no error and that even if there is error, it's harmless. With the first point, the argument for this instruction on forcible felony self-defense, it defies any logical inference from the evidence that was presented in this trial. There's simply no evidence that the defendant was unlawfully restrained or that the victim was intending to unlawfully restrain him. What about the victim's statement that he was going to muck him? Okay. That much more logically applies to the general form of self-defense that the jury was directly and explicitly and thoroughly instructed on. That's justifiable self-defense based on fear of great bodily harm or death. If that in fact was said, which I do not believe that the that's part of the reason why he was found guilty on first degree murder, that much more logically applies to the theory that actually got presented and not to this unlawful restraint theory that defendant is now advocating. Let's just think about this. Why would the victim want to prevent the defendant from leaving the building? It makes no sense. The victim did nothing to suggest he to go away. It was the defendant's pride that made a mistake. When the defendant did leave the building, as your honors pointed out, when the defendant was allowed to leave the building and then decided to come back in, the victim's brother allowed him in, even though the that the victim had any intention of keeping the defendant inside the building. He was trying to keep the defendant out of the building. The defendant was kept from leaving. He couldn't get out. There are several minutes. There's a lot of testimony here from witnesses from both sides, the victim's side and the defense side. So that was a legitimate argument on the part of the defendant. And so why shouldn't the judge have given this additional instruction? It wasn't a legitimate argument, your honor, because the person who the woman who was standing behind the defendant who was supposedly blocking the door was the defendant's friend. And the defendant on cross-examination admitted that he could at any point in time have pushed past his friend and left. He admitted that. And I would direct your honor's attention to pages 891 to 892 of the report of proceedings where he says that he could have moved her out of the way and walked out the door at any point in time. And he testified that he actually was opening the door and walking through it when he stopped and turned around and shot the victims. So the real self-defense argument here was, was the defendant in fear of great bodily harm or death. Every single thing that you've heard the defense counsel argue today in favor of unlawful restraint was much more logically presented to the jury in the context of general self-defense. This whole appropriating the building for drug dealing thing, like that was very thoroughly argued in the content of general self-defense. And it was just as thoroughly rejected by this jury. If the jury believed his self-defense argument, and this goes to my second point, which is harmless error. Even if he had been given this instruction, it wouldn't have changed the outcome of this case. The defendant, excuse me one moment. If there was any evidence supporting forcible felony self-defense, it was the exact same as general self-defense. So what that means is that if the jurors believe the defendant self-defense evidence, they would have found him not guilty already. I want to point out that the defendant, the defendant defense counsel says that there's three cases with regard to this referring to the very first sentence refers to people versus Jackson. It's a 1999 first district case. It has nothing to do with aggravated battery public way. So that case is directly analogous here. In that case, the defendant was asking for an instruction on forcible felony self-defense based on attempt criminal sexual assault. And the victim attempted to kiss the defendant and touch the defendant's penis over his clothing. And that was found to be under those circumstances, not sufficient to rise to the level of slight evidence that would justify a prevention of criminal sexual assault instruction. Also the same harmless error analysis was applied there because the court said that even if the attempt criminal sexual assault prevention instruction had been given, it would have changed absolutely nothing because those jurors informed consideration of his theory of self-defense. And that's the key standard here. Did the jury provide the defendant with informed consideration of his theory of self-defense? And the fact of the matter is that they did. If there are no additional questions on issue one, I'll turn to issues two and three. Yeah, I was going to ask you about those. Go ahead. So first of all, I want to take issue with opposing counsel's description of deliberate with regard to any misstatement that might've been made with regard to the standards of first and second degree murder. And second, I want to take exception to his claim that he objected to that. He did not object to that. He forfeited it and it doesn't meet plain error. There was very lengthy argument here. Open and close, defense, close and rebuttal. Each one of those were over 20 pages long. So these are lengthy arguments. And in those arguments, the ASAs both on open and close and in rebuttal described correctly the law and first and second degree and self-defense described it correctly over and over again, frequently in granular detail. So if one moment in that, in those pages, a twist of phrase made it sound like something was incorrect, that was unremarked upon. It was not objected to, and it was isolated within the context of these arguments where they were lengthy and they ended with the judge properly instructing the jury on all of these issues directly from the IPIs. There was nothing that was left out. What about counsel's argument that this statement, he ties it into the note from the jury. Yeah. And with that note to the jury, opposing counsel's completely ignoring the fact that the trial court provided this court on the record, its perspective on that situation. And he says, maybe this is a particularly dense jury. Who knows? Well, who knows is the trial judge. The trial judge was in the absolute best position to be able to know whether or not the jury that he had selected that he had presided over, whether or not they were confused. And the trial court explicitly said that there was, that they were not confused. Opposing counsel made the same argument both at the time of the note and in the motion for a new trial. And the trial court said, look, it's not evidence of confusion. They just want to know if there's something, some specific legal, something in addition to what they've already been given that's also out there, which makes sense because as opposing counsel points out these, those meetings, the meanings of those terms were not presented in direct definitions. They were presented as part of a larger instruction. So the judge interpreted their question to fight, to be asking, is there some additional definition, something else out there that we should have? His answer was that you have everything, which is absolutely correct because it would have just invited confusion to give them a civil definition where there's one word different. When we all know as lawyers, this is the same standard. There's only one kind of preponderance of the evidence. There isn't a different one for criminal law. Maybe the instruction is written though, compared to the instruction of civil case. I understand they're To a lay person, the way it was presented made it confusing, which is why they asked the question. It's apparently a very thoughtful jury. So they asked the question because it is not clear the it's presented to jurors. I mean, I think that's part of his argument. Yeah, that is part of his argument. And the response to that is that this is exactly why trial courts have discretion because they're the ones who are going to decide whether or not, you know, bringing the jury out and rereading an instruction, which was another thing opposing counsel requested, makes sense. Or if just redirecting them to the printed instructions that they all already have makes sense. It was an absolutely appropriate exercise of discretion to decide that this jury did not appear to actually be confused and was just making sure, just being thorough to make sure there wasn't anything else out there that they needed. And the evidence that the trial court was correct about that is the fact that the jury came back with guilty verdicts less than 20 minutes after that answer, being telling them that they had all the law already, after that answer went back less than 20 minutes. And there's a guilty verdict. So this wasn't an issue of confusion. And the trial court explicitly said it wasn't an issue of confusion. Trial court was in the best position to judge that. And as I said, with issue two as well, like there was nothing improper about the argument, and there was nothing improper about the answers here. If I realize that a lot of issues got brought up, and I hope that if your honors have any other questions with regard to any of those other questions, you'll allow me to answer them at this point. In that case, for the reasons in our briefs, as well as those presented here, the people asked you affirm the defendant's convictions and sentence. Mr. Richards? Yes, your honor. I just made two short points. One, in terms of Philip Allison's testimony, part of it, and I'm just reading from it now on page 891, he said, so your friend was holding the door closed and keeping the cap in the building, captive in the building. Is that what you're saying today? And he says, yes. Now, could he have forced his way out? Could he have run away? Maybe. But the general rule is, in terms of self-defense in Illinois, which is a stand your ground state, is that you have no duty to retreat. And therefore, yes, he reasonably believed that someone was trying to restrain his movements, and therefore, that he was being subjected to unlawful restraint. That combined with reasonable fears as to what they might do, given the fact that there are three of them, that one of them was putting his hands down his pants, that another one was saying, I'll murk you in this motherfucker, and was reaching for something. Those were all reasonable ingredients as to why, number one, he would pull a gun, and number two, would fire it. Now, as to the state's argument that the jury was obviously enlightened by the judge's comments, because they returned a verdict 20 minutes later, I would say the opposite is true. If they were that confused, how in the world, in 20 minutes, would they unconfuse themselves? If they had given the original correct instructions without some instruction on the issues that they were concerned about, what preponderance means, what mitigating factors means, it's clear that they simply threw their hands up. They rejected second degree. They shouldn't have rejected second degree. And Philip Allison was wrongly convicted of first degree, and that's why his conviction to be reversed, the case should be remanded for a new trial. And for the questions, I've concluded my argument. And thank you for your time. Any questions? No, hearing none. Mr. Richards, Mr. Pivo Virchak, we want to thank you for your excellent oral argument and your wonderful briefs. They've brought a lot of information to this court, which we will consider carefully and take under advisement. And so for today, at least, this case is adjourned.